(Reap. Dec. 9612)

INTERNATIONAL EXPEDITERS, INC., ET AL. *v.* UNITED STATES

Entry No. 8651, etc.

(Decided February 29, 1960)

*Wallace & Schwartz (Barnes, Richardson & Colburn* by *Joseph Schwartz* of counsel) for the plaintiffs.

*George Cochran Doub,* Assistant Attorney General (*Sheila N. Ziff,* trial attorney), for the defendant.

MOLLISON, Judge: The 39 appeals for reappraisement enumerated in the attached schedule were consolidated for trial and disposition together. They are appeals from the values returned by the United States appraiser at the port of Chicago on diamond grinding wheels imported in some cases from Belgium and in the other cases from Holland, during the years 1951, 1952, and 1953. Inasmuch as the merchandise was imported from two different countries and the evidence as to the values is not the same, for the purposes of this decision, the appeals involving importations from each country will be treated separately.

### Merchandise from Belgium

The diamond grinding wheels imported from Belgium were entered at the invoiced values, which were advanced on appraisement. The appraisement is stated to have been on the basis of foreign value of similar merchandise, and it is claimed by the plaintiffs that the invoiced values represented the foreign and export values of such or similar merchandise. The terms "foreign value" and "export value" and the basis of their application to the valuation of merchandise, as in force and effect at the times here pertinent, are defined in sec-

tion 402 (c), (d), and (a), respectively, of the Tariff Act of 1930, as amended.

The evidence offered by the plaintiffs consists of the affidavit of one Hugh T. Peeters, who identifies himself therein as direction secretary and export director of the exporter of the involved grinding wheels from Belgium, and familiar with the sales policies and practices of the exporter, both for home consumption and exportation to the United States, at the times here pertinent. In addition, the record contains the oral testimony of the president of the firm which was the ultimate consignee of the merchandise.

The gist of Mr. Peeters' affidavit, which was received in evidence as plaintiffs' exhibit 1, is contained in his statements that—

* * * The basic price to all purchasers of diamond grinding wheels in the United States was the same and was based upon the quantity and quality of the diamond content. * * * The V.H. company [the exporter] was also willing to sell to the other buyers in the United States diamond grinding wheels of the same diamond quality and quantity as the wheels shipped to Ralph Watkins International Trade [the ultimate consignee herein] at the same prices as to Ralph Watkins International Trade. The prices to Ralph Watkins International Trade and to all other buyers represented the freely offered selling prices of the V.H. company to all purchasers in the United States for similar grinding wheels having comparable content and quality of diamonds.

The prices at which the V.H. company sold to Ralph Watkins International Trade and to all other buyers in the United States represented the prices at which such or similar merchandise was freely offered for sale to all purchasers in the principal markets of Belgium in the usual wholesale quantities and in the ordinary course of the trade, for exportation to the United States and other countries or for home consumption in Belgium, including the cost of all containers and coverings of whatever nature and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States or other countries.

The oral testimony of the president of the ultimate consignee and actual importer of the diamond grinding wheels in issue contributes little, if anything, by way of extension, support, or corroboration of the foregoing with respect to the importations from Belgium.

The picture painted by the plaintiffs' evidence of a uniform price to all purchasers is considerably different from that shown by the evidence offered by the defendant, consisting of the report of an American vice consul with respect to an investigation made by him at or about the time of the importations here involved at the office and factory of the Belgian exporter. The report indicates that the price at which the diamond grinding wheels were sold to the importer in these cases was a preferred price extended only on the basis of bargaining and other considerations, and that the prices at which such or similar merchandise was offered to others were higher.

Both the affidavit, plaintiffs' exhibit 1, and the report, which was received in evidence as defendant's collective exhibit A, suffer from

deficiencies which, however, do not go to their admissibility, but only to the weight which may be given to them. I am of the opinion, having carefully examined the evidence offered by the plaintiffs and that offered by the defendant, that the preponderance in weight favors the latter, and hold that the plaintiffs have failed to establish values for the merchandise involved other than those returned by the appraiser.

### Merchandise from Holland

In addition to the oral testimony of the president of the ultimate consignee, the evidence offered on behalf of the plaintiffs consists of an affidavit of the owner of the manufacturing and exporting concern in Holland, which affidavit was executed 4 or 5 years after the date of the latest exportation here involved. The affidavit was received in evidence as plaintiffs' exhibit 2.

The affiant states that at the time of the exportations here involved her work for the company was as "commissary," a term not further explained, but the affiant does indicate a knowledge of the merchandise and the sales prices and policies of the firm during the years 1952 and 1953.

A list of sales made to the United States during those years is contained in the affidavit, but is of no probative value, inasmuch as it does not contain any of the details necessary to determine whether the merchandise covered by those sales was the same as or similar to that here involved.

It should be explained that the evidence of both the plaintiffs and the defendant seems to agree on the point that the price or value of diamond grinding wheels such as those here involved depends upon the exact details as to its construction which are usually given in the following manner:

There is first a designation composed of letters and figures denoting the general character of the wheel, whether flat, cup shaped, flared, etc., and the bonding agent. Following this are figures and/or words or letters denoting the diameter, width, and spindle hole of the wheel, the size of the diamond grains, the number of grains per cubic centimeter of the diamond section, and the depth of the diamond section. Thus, D1T straight, resin, 6″ x ⅛″ x 1¼″, D 150/100—⅛″, indicates a flat wheel with straight cutting edge, resin bonded, 6 inches in diameter, one-eighth of an inch in width, with a spindle hole of 1¼ inches, having diamonds of the grit size of 150 impregnated in the edge to a depth of one-eighth of an inch, and in the concentration of 100 grains per cubic centimeter.

About the only comparatively unimportant factor in the details seems to be the size of the spindle hole. A change in any of the other details, particularly involving the diamond content, changes the price.

Consequently, the list of sales contained in plaintiffs' exhibit 2, which gives only the figures denoting the type and shape of the wheels involved and does not indicate the diamond content, are virtually valueless from an appraisement standpoint.

Also offered and received in evidence were 10 pages of documentary material purporting to be copies of 9 invoices of the manufacturer to various purchasers in the United States and abroad during the years 1952 and 1953. One of such invoices appears to have been to a firm in Switzerland and is apparently in German and without translation. Another appears to have been to a firm in Sweden and lists prices on merchandise invoiced in millimeters, whereas the merchandise here involved was all invoiced and appraised on the basis of inch sizes. A third invoice appears to have been to a firm in Amsterdam, and, strangely enough, appears to have been in United States dollars, with certain unexplained discounts or "rabats" noted thereon.

The remaining six invoices are to firms in the United States, and, while they tend to corroborate the figures given in the list of sales enumerated in plaintiffs' exhibit 2, I am unable to find that any of the prices shown thereon tend to show the correctness of any of the *invoiced and entered* values.

For example, in reappraisement No. 249757–A, the invoice covers, among others, a wheel described as—

> Type D1T, RESIN BOND
> 6″ x ¼″ x 1¼″
> D 100/SUPER—B—⅛″

with an invoiced price of United States $77.80. It should be noted that the evidence offered by the defendant indicates that the term "SUPER" indicates a diamond concentration of 100 per cubic centimeter.

Plaintiffs' exhibit 3 has a copy of an invoice showing—

> Type D1T, marked "CASE"
> 6″ x ¼″ x ⅝″ hole
> D 100 L 100 BG ⅛″

with an invoice price of $90.77. The merchandise was appraised at $127.08. If the diameter of the spindle hole, 1¼ inches in one case and five-eighths of an inch in the other, has a significant effect upon the value, the evidence fails to establish that fact, nor is the difference between "B" and "BG" in the line relating to the diamond content shown to have any significance.

Plaintiffs have not pointed out any specific instance in which the proof which they offered establishes or tends to establish the correctness of any of the invoiced and entered values, and, on the record presented, I am unable to find that the plaintiffs have sustained their

burden of establishing the incorrectness of the appraised values and the correctness of the invoiced and entered values which they contend are the correct values of the merchandise.

I find as facts:

(1) That the merchandise consists of diamond grinding wheels imported from Belgium and Holland during the years 1951, 1952, and 1953.

(2) That the record facts are insufficient to establish the elements of value in accordance with any of the statutory formulae therefor.

I conclude as matter of law:

That, inasmuch as the plaintiffs have failed to prove values for the merchandise other than those found by the appraiser in each case, by operation of section 2633, title 28, United States Code, such values are the values of the merchandise.